**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

ALL AMERICAN ENVIRONMENTAL, LLC,
  *Plaintiff*,

v.

58 OLD GRAYS BRIDGE, LLC,
  *Defendant*.

No. 3:20-cv-01295 (MPS)

---

**RULING ON MOTION TO DISMISS**

Plaintiff All American Environmental, LLC ("All American") brings this action against 58 Old Grays Bridge, LLC ("58 Old Grays") for damages based on claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, intentional misrepresentation, and violation of the Connecticut Unfair Trade Practice Act ("CUTPA"). 58 Old Grays now moves to dismiss All American's suit for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (ECF No. 14.) For the reasons discussed below, 58 Old Grays's motion is DENIED.

## I. BACKGROUND

The following facts are derived from the Plaintiff's complaint (ECF No. 1) and are assumed to be true for the purposes of this motion.

On or about December 6, 2016 All American entered into an agreement with 58 Old Grays, according to which All American would provide labor and materials for an environmental remediation project (the "Project") located at 58 Old Grays Bridge Road in Brookfield, CT (the "Property"). (*Id.* at 2 ¶ 11.) The parties set forth the details of this agreement in a contract dated December 6 (the "Contract"). (*Id.*) That Contract provided that the scope of work to be

performed on the Project by All American was removal for off-site disposal of all soil that exhibited polychlorinated bi-phenol ("PCB") levels in excess of 10 mg/kg.  (*Id.* at 3 ¶ 12.)  The December 2016 Contract also set forth a schedule of values listing the items of work to be performed by All American alongside their corresponding prices.  (*Id.* at 3 ¶ 13.)  It provided that the cost of the Project, based on this schedule of values, was $1,216,400.00.  (*Id.*)  It also provided that this price did not include "scope of work to be done on any items other th[an] described herein."  (*Id.* at 3 ¶ 14.)  The parties also executed an Addendum to the Contract in which they agreed that the scope of work set forth in the Contract would be done on a "capped fee" basis not to exceed $1,216,400.00.  (*Id.* at 4 ¶ 20.)

The schedule of values set forth in the Contract was based on a 2017 work plan approved by the Connecticut Department of Energy & Environmental Protection ("DEEP") dated April 5, 2017 ("2017 Work Plan").[1]  (*Id.* at 3 ¶ 15.)  The 2017 Work Plan states that "58 Old Grays Bridge LLC proposes to remediate all soils beneath the building to PCB cleanup criterion of 10 mg/kg."  (*Id.* at 3 ¶ 16.)  It also identifies 1,751 square feet of surface area that would need to be excavated in order the complete the remediation.  (*Id.* at 3 ¶ 17.)  The Work Plan also states that—upon reaching the cleanup target of 10 mg/kg—58 Old Grays would seek and obtain an Environmental Land Use Restriction ("ELUR") for the property.  (*Id.* at 3 ¶ 18.)  All American relied on the 2017 Work Plan to estimate that it would need to excavate 2,000 tons of soil to reach the target levels of 10 mg/kg.  (*Id.* at 4 ¶ 19.)

On or about February 28, 2017, All American began work on the Project.  (*Id.* at 4 ¶ 21.)  All American identified thirteen interior areas and six exterior areas of contamination to be excavated and remediated in order to complete the Project.  (*Id.* at 4 ¶ 22.)  All American

---

[1] It is not clear to the Court how the contents of an agreement dated December 6, 2016 could be based upon a work plan dated April 5, 2017, but this allegation is not critical to the Court's ruling on this motion.

contracted with Licensed Site Remediation Professional ("LSRP") Ralph Klass to complete the site remediation.  (*Id.* at 4 ¶ 23.)

Shortly after the Project began, 58 Old Grays communicated to All American and LSRP Klass that it wanted to remediate all soils on the Property to a PCB cleanup criterion of less than 1 mg/kg, rather than the 10 mg/kg level agreed to in the December 2016 Contract, so that it would not need to seek a ELUR.  (*Id.* at 4 ¶ 24.)  All American agreed to perform the additional work on the condition that 58 Old Grays would compensate it for all work performed outside the scope of the Contract.  (*Id.* at 4 ¶ 25.)  58 Old Grays repeatedly assured All American that it would pay for the extra work because it wanted to get the Property fully clean.  (*Id.* at 4 ¶ 26.) 58 Old Grays also communicated to the DEEP, through mandated filings LSRP Klass submitted to the DEEP, that it wanted to bring the PCB levels to less than 1 mg/kg.  (*Id.* at 4 ¶ 27.)  LSRP Klass filed a status report with the DEEP on June 27, 2018 on behalf of 58 Old Grays in which he stated that 58 Old Grays was "committed to continue soil excavation with a goal of obtaining compliance with the [PCB criteria of 1.0 mg/kg]."  (*Id.* at 5 ¶ 28.)  He filed a second status report on August 8, 2019, which stated that "[a]t the present time Mr. Mehmetaj has set the project cleanup target criteria for site soil remediation at the [level] of 1.0 mg/Kg."  (*Id.* at 5 ¶ 29.)  (Arif Mehmetaj is one of the members of 58 Old Grays Bridge, LLC.)

At 58 Old Grays's request, All American performed excavations and soil remediation outside the scope of the Contract in an attempt to bring the PCB levels on the Property below 1 mg/kg.  (*Id.* at 5 ¶ 30.)  In addition, as All American performed work on the Project, it discovered that the soil contamination was far more extensive than 58 Old Grays had indicated. (*Id.* at 5 ¶ 31.)  As a result, costs associated with the Project increased "exponentially" as it progressed.  (*Id.*)

3

As of August 8, 2019, All American had remediated 3 of the 6 exterior areas to the 10 mg/kg level agreed to in the Contract.  (*Id.* at 5 ¶ 32.)  As of December 5, 2019, All American had remediated 10 of the 13 interior areas to the 10 mg/kg level agreed to in the Contract.  (*Id.* at 5 ¶ 32.)  58 Old Grays instructed All American to continue excavating and testing areas which had already reached the 10 mg/kg threshold in order to reach the new goal of PCB levels below 1 mg/kg.  (*Id.* at 5 ¶ 34.)  Additional sampling and excavations must still be performed in order to achieve PCB levels less than 1 mg/kg throughout the property.  (*Id.* at 5 ¶ 35.)  As of September 2, 2020, All American had excavated 4,446 square feet, over two and a half times the 1,751 square feet agreed to by the parties in the Contract, and 2,421 tons of soil, 421 tons more than the parties agreed to in the Contract.  (*Id.* at 5 ¶ 36-37.)  All American has been unable to complete portions of the Project, such as the installation of a concrete cap, because 58 Old Grays required that excavations continue in order to bring the PCB levels to less than 1.0 mg/kg.  (*Id.* at 5 ¶ 38.)

In the Contract, the parties agreed that 58 Old Grays would make progress payments commensurate with the amount of work performed by All American.  (*Id.* at 6 ¶ 39.)  From about December 16, 2016 through October 1, 2018, 58 Old Grays made payments totaling $670,000.00.  (*Id.* at 6 ¶ 40.)  From October 1, 2018 through July 30, 2019, 58 Old Grays made only two payments—one for $20,000.00 on May 31, 2019 and one for $80,000.00 on July 30, 2019.  (*Id.*at 6 ¶ 41.)  All American continued to perform work at 58 Old Grays's direction until February 26, 2020, at which point it discontinued performance due to 58 Old Grays's refusal to make progress payments.  (*Id.* at 6 ¶ 42.)  58 Old Grays has made payments totaling $770,000.00.  (*Id.* at 6 ¶ 43.)  The total Contract price is $1,216,400.00.  (*Id.* at 3 ¶ 13.)  All American has performed work in the amount of $1,472,235.97 (approximately 121% of the Contract price).  (*Id.* at 6 ¶ 44.)  In addition, All American continues to be charged monthly fees

while the contaminated soil sits on the Property.  (*Id.* at 7 ¶ 45.)  Although All American has made repeated demands for payment, 58 Old Grays has refused to make payments commensurate with the Project progress.  (*Id.* at 7 ¶ 46.)

All American alleges that throughout the Project, 58 Old Grays Bridge engaged in misleading and threatening behavior.  (*Id.* at 7 ¶ 50.)  It entered into the Contract, which set the remediation goal at 10 mg/kg, with no intention of honoring that term.  (*Id.*)  When it asked All American to change the goal from 10 mg/kg to 1 mg/kg, it promised to pay All American for the extra work even though it did not intend to do so.  (*Id.*)  58 Old Grays was aware of the extent of PCB contamination on the Property based on conversations its members had with the prior owner and contractors at the time that 58 Old Grays bought the Property.  (*Id.* at 9 ¶ 57.)  But it did not share this information with All American, and it refused to allow All American to perform soil testing to ensure that the Contract price was adequate given the extent of the contamination.  (*Id.* at 7 ¶ 50.)  It asked All American to sign additional addenda to the Contract, which materially changed the December 2016 Contract terms or included false statements, without offering additional consideration and as a condition of giving All American payments already owed.  (*Id.*)  All American refused to sign at least one of these addenda.  (*Id.*)  58 Old Grays then threatened baseless litigation when All American demanded payment for work already performed.  (*Id.*)  Finally, it asked All American to collect samples from "clean" locations in order to submit falsified reports to the DEEP and the U.S. Environmental Protection Agency, but All American refused to do so.  (*Id.*)

On September 2, 2020, All American filed its complaint, claiming that 58 Old Grays owed it $702,235.97 for work performed within the scope of the Contract and for additional work performed outside the scope of the Contract.  58 Old Grays responded by filing a motion to

dismiss under Fed. R. Civ. P. 12(b)(6).  (ECF No. 14.)  All American filed a memorandum in opposition.  (ECF No. 21.)  58 Old Grays did not file a reply.

## II.     LEGAL STANDARD

In assessing a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004); *Ashcroft*, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions.")  "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  In addition to the allegations of the complaint, this includes both documents expressly incorporated into the complaint and those on which the complaint relies heavily.

## III.    DISCUSSION

58 Old Grays argues that the breach of contract, violation of the covenant of good faith and fair dealing, and unjust enrichment claims fail because All American concedes that 58 Old Grays has paid it for all the work All American has performed.  All American disagrees,

referencing its allegations that it has performed work both within and beyond the scope of the written Contract that 58 Old Grays has refused to pay for.  58 Old Grays also argues that the intentional misrepresentation and CUTPA claims fail because All American concedes that it did not rely to its detriment on any false statements made by 58 Old Grays.  All American disagrees, arguing that it relied on such statements (and not only the report of a third party, as 58 Old Grays contends) to estimate the scope and cost of the work to be performed under the written Contract. Because the arguments raised by 58 Old Grays in its motion to dismiss do not provide a basis for dismissing any of the five claims asserted in this case, the Court denies the motion.

### A.      Breach of Contract

All American alleges that the parties formed an agreement according to which All American would perform soil excavation and removal work at a property owned by 58 Old Grays to reduce the levels of PCBs in the soil below 10 mg/kg.  In exchange, 58 Old Grays would pay All American a total of $1,216,400.00 in progress payments commensurate with the amount of work performed by All American.  This agreement was memorialized in the Contract signed by the parties in December 2016.  All American further alleges that at some later point, 58 Old Grays modified their agreement.  Under the modified agreement, All American agreed to perform the work required to reduce PCB levels below 1 mg/kg in exchange for additional consideration from 58 Old Grays.  According to All American, 58 Old Grays breached their agreement when it stopped making regular progress payments in October 2018 and stopped making payments altogether after July 2019 despite All American's continued performance of its obligations under their agreement until February 2020.  All American alleges that 58 Old Grays owes it $702,235.97 for work All American has performed under their agreement.

To allege breach of contract, a plaintiff must plead 1) formation of an agreement, 2) performance by one party, 3) breach by another party, and 4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014).  For purposes of its motion to dismiss, 58 Old Grays argues only that All American has failed to plead that it suffered damages as a result of 58 Old Grays's alleged breach of their agreement.  58 Old Grays argues that the Court should dismiss this claim because All American acknowledges that it has not completed any work outside the scope of the written Contract and, therefore, cannot have suffered any damages because the payments 58 Old Grays has made to date are commensurate with the work All American has completed under the Contract.  While All American does not claim that it remediated any areas of the property to below the 1 mg/kg level, All American alleges that it performed "excavations and soil remediation outside the scope of the Contract to attempt to bring the PCB levels on the property to less than 1 mg/kg," (ECF No. 1 at 5 ¶ 30), and that it has suffered damages in the amount of $702,235.97 due to 58 Old Grays's failure to pay it for that work as well as for work performed within the scope of the written Contract.  Because I must accept All American's allegations as true and draw all reasonable inferences in its favor, I reject 58 Old Grays's argument and find that All American has properly alleged a breach of contract claim.

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing

All American alleges that 58 Old Grays breached the implied covenant of good faith and fair dealing by (1) inducing All American to enter into the Contract with no intention of honoring an essential term of the agreement (that the intended remediation goal was PCB levels below 10 mg/kg); (2) inducing All American to agree to change this term based on false promises of payment for the extra work; (3) concealing the true extent of PCB contamination of the property;

(4) refusing to allow All American to perform soil testing to ensure that the contracted price was adequate in light of the extent of the contamination; (5) attempting to coerce All American into signing additional addenda to the Contract materially changing the terms of the agreement in order to receive consideration already owed under the Contract; (6) threatening litigation when All American demanded payment for work already performed; and (7) asking All American to help it falsify DEEP and Environmental Protection Agency reports.

"[T]he duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship." *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 295 (D. Conn. 2017) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 387 (Conn. 2004)). This duty "requir[es] that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Id.* To set out a cognizable claim of breach of the duty, the plaintiff must allege that "the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract [were] taken in bad faith." *Calhoun v. Providence Mut. Fire Ins. Co.*, 204 F. Supp. 3d 436, 442 (D. Conn. 2016) (quoting *De La Concha*, 849 A.2d at 386). "Bad faith in this context is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." *Nwachukwu*, 257 F. Supp. at 295 (internal quotations omitted). "[V]iolations of express duties are necessary to maintain a bad faith cause of action." *Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 67 A.3d 961, 988 (Conn. 2013). Generally, "whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends on the facts of the particular case, and is ordinarily … determined by the … finder of fact." *Landry v. Spitz,* 925 A.2d 334, 344 (Conn. App. 2007).

58 Old Grays argues that this claim should be dismissed because All American has failed to plead that it suffered damages as a result of 58 Old Grays's alleged breach and because the claim does not allege breach of a specific contract term by 58 Old Grays.  Its argument regarding damages does not support dismissal for the reasons discussed above in the context of the breach of contract claim.  Its second argument is more successful but insufficient to support dismissal of this cause of action.  58 Old Grays is correct that the allegation that it asked All American to help it falsify reports does not appear to relate to any specific term of the parties' agreement—it is unclear how one could plausibly infer that 58 Old Grays breached a contractual duty by engaging in such conduct.  Similarly, the allegations that 58 Old Grays did not intend to honor the 10 mg/kg term, concealed the level of PCB contamination during contract negotiations, and refused to allow All American to perform soil testing before signing the Contract indicate that 58 Old Grays behaved in a dishonest fashion during formation of the Contract but not that it violated any contractual obligations.  *See Macomber v. Travelers Property and Cas. Corp.*, 804 A.2d 180, 193 (Conn. 2002) ("[N]o claim for breach of the duty of good faith and fair dealing will lie for conduct occurring prior to, or during, the formation of a contract.").  Likewise, any false promises 58 Old Grays made to induce All American to alter the contractual term regarding PCB levels occurred in the context of either amending the existing Contract or forming a new one and may not, therefore, support a claim of breach of the implied covenant of good faith and fair dealing.

But All American also alleges that 58 Old Grays attempted to get it to sign addenda to the Contract changing the terms of the parties' agreement in order to receive payment already owed and threatened litigation when All American demanded payment owed.  This conduct could constitute an effort to impede All American from enjoying a benefit to which it was entitled

10

under the parties' agreement—payment for work it performed according to that agreement.  It is

at least plausible there are circumstances under which this conduct would show bad faith on the

part of 58 Old Grays, and so All American has made out a claim for breach of the implied

covenant of good faith and fair dealing.

> **C.      Unjust Enrichment**

All American alleges that 58 Old Grays has been unjustly enriched because it has

benefitted from site remediation work performed by All American for which it has not paid.

"Unjust enrichment applies wherever justice requires compensation to be given for property or

services rendered under a contract, and no remedy is available by an action on the contract."

*Vertex, Inc. v. City of Waterbury*, 898 A.2d 178, 190 (Conn. 2006).  A plaintiff seeking recovery

for unjust enrichment must prove (1) that the defendant was benefited, (2) that the defendant

unjustly did not pay the plaintiff for the benefit, and (3) that the failure of payment was to the

plaintiff's detriment.  *Id.* (citing *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,

649 A.2d 518 (Conn. 1994)).  58 Old Grays argues that All American has failed to state a claim

because it admits both that it has not done work beyond the scope of the written Contract and

that 58 Old Grays has made payment proportionate to the work All American has performed

within the scope of the written Contract.  In fact, however, All American alleges that it has

performed work both within and beyond the scope of the written Contract worth $1,472.235.97

and that 58 Old Grays has paid it only $770,000.00 for that work.  Because All American has

alleged that 58 Old Grays has received a benefit (soil excavation and remediation) for which it

did not pay All American, and that All American has suffered a detriment based on the failure to

pay (non-receipt of $702,235.97 to which it alleges it is entitled), All American has adequately pled its unjust enrichment claim.[2]

### D.      Intentional Misrepresentation

All American alleges that 58 Old Grays engaged in intentional misrepresentation when it falsely represented the full extent of PCB contamination at the Property when the parties were negotiating Contract pricing.  To assert a claim for intentional misrepresentation, a plaintiff must prove that "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to [its] injury." *Peterson v. McAndrew*, 125 A.3d 241, 257 (Conn. App. 2015) (internal citation and quotation marks omitted). 58 Old Grays argues that All American's intentional misrepresentation claim fails because the Contract specifies that All American determined the scope of work to be completed (and, thus, the Contract price) based upon a site investigation report completed by a third party, rather than on the basis of any representations made by 58 Old Grays.  But All American nowhere alleges that it relied solely on the site investigation report in developing its estimate.  It also alleges that 58 Old Grays misrepresented the true extent of the PCB contamination in an effort to get All American to underestimate the cost of the Project, and that 58 Old Grays knew its misrepresentations to be false based on conversations with the prior property owner and with contractors.  Thus, 58 Old Grays's argument cannot support dismissal of this claim.

### E.      Violation of CUTPA

---

[2] All American can maintain the unjust enrichment claim, however, only as an alternative claim to be advanced if, for some reason, the finder of fact concludes that there was no contract between the parties. *See Fritz v. N. Am. Power & Gas, LLC*, No. 14-cv-634 (WWE), 2015 WL 13841606, at *3 (D. Conn. Oct. 29, 2015) (permitting unjust enrichment claim to proceed as an alternative to claim for breach of contract "if the contract is found to be illusory").

Finally, All American alleges that 58 Old Grays violated CUTPA by (1) inducing All American to enter into the Contract with no intention of honoring an essential term of the agreement (that the intended remediation goal was PCB levels below 10 mg/kg); (2) inducing All American to agree to change this term based on false promises of payment for the extra work; (3) concealing the true extent of PCB contamination of the property; (4) refusing to allow All American to perform soil testing to ensure that the contracted price was adequate in light of the extent of the contamination; (5) attempting to coerce All American into signing additional addenda to the Contract materially changing the terms of the agreement in order to receive consideration already owed under the Contract; (6) threatening litigation when All American demanded payment for work already performed; and (7) asking All American to help it falsify DEEP and Environmental Protection Agency reports. 58 Old Grays argues that All American has failed to make out a CUTPA claim because All American acknowledges that it relied solely on a report prepared by a third party in determining the scope and cost of the work it would perform under the Contract. As noted in the previous section, All American does not allege that it relied solely on this report. Moreover, 58 Old Grays's argument does not address much of the conduct that All American alleges violated CUTPA, such as the attempts to coerce All American to sign addenda, the threats to litigate, and the requests for assistance falsifying reports. Thus, 58 Old Grays's argument cannot support dismissal of this claim.

## IV.   CONCLUSION

For the reasons above, 58 Old Grays's motion to dismiss (ECF No. 14) is DENIED.

/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              September 10, 2021